Call of the calendar, and we'll hear counsel in McGee against Dunn and Fox. Mr. Lovett, go ahead. Good morning, Your Honors. Probably the simplest issue in this case is the complete absence of probable cause or arguable probable cause. And I say that for this reason. When Mr. Galindo executed his voluntary statement on March 27th of 07, he didn't include most of the facts required to make out a tampering with a witness in the fourth degree of charge. He did not allege, as the statute requires, and the court's convenience, we've got the statute quoted on page 15 of our main brief. It requires that the target be a witness or about to be called as a witness in a pending action or proceeding. What did he say? I'm sorry? What did he say about that? He said he didn't say anything about him being a witness. He didn't say a word about him being about to be called as a witness. He didn't say there was a proceeding, and he didn't say there was an action. He said, yes, he is. He's going to go to the court to go to ask you. They're going to ask you if you are legal in USA. That's what he attributed to my client. But he never said he was a witness. He never was a witness, in fact, except until Mr. Dunn. He attributed it to your client. Your client had already acknowledged that he may be going to the court. Well, with all due respect, maybe is not a criteria for tampering in the fourth degree. You have to actually be a witness or actually be about to be called as a witness. And that's why the appellees make repeated reference to arguable or probable witness or potential witness. That has nothing to do with the tampering statute. I don't understand. Why isn't the perception of the individuals involved relevant? You're suggesting that it has to be a provable fact that he was going to be a witness. Because that's what's required to make out the tampering charge. It's got to be an action. Not at the probable cause stage. I'm sorry? Not at the probable cause stage. Lots of probable cause is determined by magistrates, and a number of those, I won't say a significant number of those, turn out not to be provable by the government beyond a reasonable doubt. Well, this wasn't a charge that was actually alleged, neither in his voluntary statement of 320707, nor in the accusatory instrument, which was backdated to the same date. There isn't a legally sufficient series of allegations, aside from which, in the voluntary statement, there's no offense date. Now, there's been some suggestions made that you don't need an offense date, but if you read the tampering in the fourth degree, you do, because you have to know that the person is a witness in a case or in a proceeding. Can we go back to the accusatory instrument is what we're looking at? I'm sorry? Is it the accusatory instrument that we're looking at? Well, the accusatory instrument didn't say any more than the voluntary statement. It didn't allege witness, didn't allege about to be called as a witness. If I go to the court to testify, I mean, he references going to court to testify, they're going to ask me if I was a citizen or legal in the United States of America. Well, you just told us that he doesn't reference testifying. He did not testify, except in the contingency. No, no, no, no. You made a representation that he in or these instruments, either the accusatory instrument or the voluntary instrument, didn't make a reference to testifying in court. Is that correct? He said that my client does. Oh, is that correct, that that was what you started your argument with? Yes. Okay. And I'm reading something, and I'm just trying to understand the document. It says accusatory instrument. It's at A1595, if you want to take a look at it. And it says, I think he's trying to scare me if I go to the court to testify because he asked me if I was a citizen or legal in the United States of America, in the USA. So he references testifying in court. But, Mr. McGee, never said anything about a witness or a pending proceeding. What does testify mean to you? Where do you testify other than in a court proceeding? Well, that almost begs the question. Could you answer my question before you go? Well, what does the word testify? Where else do you testify? Church, I guess, but I don't think we're talking about that. In a judicial or quasi-judicial proceeding. Right. So there you've got it, a proceeding, testimony, witness. Yes. What's missing? He wasn't a witness or about to be a witness. He was going to testify. He never did testify, except when they contrived a situation on March 21 of 07. Well, sometimes tampered with witnesses don't testify because they're scared. So it has to be about to testify, it seems to me. Well, the statute doesn't say that. But Galindo testified that what he meant by scared was that if he asked a lot of questions, there may be confusion. And he said, I'm not worried about going to jail. And, in fact, he told my client he wasn't going to testify. So the question I think to us is whether there was probable cause or arguable probable cause when he wrote. And there's another separate issue about Mr. Dunn's involvement, but set that aside for a second. Just looking at the accusatory instrument on 1595, when he wrote, I think he was trying to scare me that if I go to court to testify, they would ask me if I was a citizen or legal. Is that your contention that that is not a basis for arguable probable cause? Absolutely, because in order to have arguable probable cause, an officer has to have an objectively reasonable basis for believing there was probable cause. Well, someone says to them, I was called and I was scared, and someone was trying to stop me from testifying in court. Is that not enough under, what is it, 215.10? I think not, because 215.10 is explicit in requiring the person to actually be a witness or about to be called as a witness in a proceeding or an action. And speculative hypotheses don't work under that statute. Your view is that in those circumstances, the arresting official, whoever that might be, needs to, beyond just obtaining the statement, confirm that that person is actually going to be a witness in whatever legal proceeding. Absolutely. And in this case, Galindo had to say, because he wrote out the first involuntary statement, that he was a witness or about to be a witness in a particular proceeding or action. He said none of that. He didn't even give an offense state for the supposed conversation with my client. And I think that the absence of an offense state, and if you look through the record, there are multiple different offense states that are given. None of them coexist. Let me ask you something, and I just don't know enough about 215.10, but what if the statement were the following? If you ever in the future testify against me, I'm going to kill you. That's not tampering with a witness. That's hypothetical, if you are at some point in time. And that's not what the tampering statute says. But the lack of a date for a supposed offense should have alerted all of the police involved in this case that there couldn't be a tampering with a witness in the fourth degree charge. The lack of the allegations of the critical elements in that statute should have been a warning to all the police that there couldn't be an allegation or a sufficient allegation of tampering in the fourth degree. Everybody who came in contact with those allegations must have known that the arrest was illegal because there was no tampering with a witness in the fourth degree alleged. It's really not that. I think your argument, as I understand it now, is that there was no action or proceeding. That's true. But is that right? There was no action or proceeding at the time my client made the phone call, which was April 6th of 06. And they fished around. Fox came up with a date that was months after my client was arrested. They had all different dates, 05, 06. Fox was November 07. They were searching for a date. And that's why I believe he provides them with a date, November 06. Well, November 06 had nothing to do with the time my client made the call. That was April of 06, April 6th of 06. That's why they were looking around to find. That's when the call was made, yes. Yeah. They were looking around to find some kind of proceeding that would match up with the April 6th date. But on April 6th, there were no proceedings pending. So matching that up would have been futile. I see my red light is on. If the Court has any further questions. Thank you. Thomas Minotti for the appellee, Dunn. Dunn was not a state actor. He did not conspire with any state actors. There was no meeting of the minds or prearranged plan between Dunn and any state actor. Officer Fox was the only one who determined to arrest McGee, the appellant. Officer Fox made that determination solely based on Galindo's voluntary statement. He was not asked to arrest the appellant by Dunn, by Detective Harney, by ADA Noah, or anybody else. Galindo went to the police department to give the voluntary statement on his own. Dunn did not tell him to go there. Dunn did not go into the police department with Galindo. Galindo gave the voluntary statement to Officer Fox. They were the only two in the room at the time. And, like I said, Officer Fox used that and that alone as the basis to arrest the appellant. Dunn did not even know Fox, Officer Fox. He never met him before that day. He was introduced to him that day for the first time. And he didn't give information to him. He just introduced Galindo. He just introduced him. That was it. Fox testified that he had no idea there was any civil litigation between appellant and Dunn. The first time he learned about that was during this case. I believe the fact that Fox, there was a separation between Officer Fox and Dunn, shows that there can be no, Dunn was not acting under color of state law to fire, to have McGee arrested. That aside, I do believe there was probable cause to arrest the appellant. Appellant did admit to making the phone call to Galindo. And in his handwritten notes when he was on the phone with Galindo, he wrote two things. Would not be testifying and did not witness water damage. He did not write his address down, like appellant said. The purpose of the call was to get his address for the Liberty Mutual arbitration. And that was the pending proceeding. Appellant admitted to making the phone call. And it was a pending proceeding in April 2007. Yes, it was the Liberty Mutual arbitration. It wasn't a court proceeding, but it was an arbitration. Is that cognizable under the statute? Excuse me, Your Honor? Is that cognizable as a proceeding under the statute, or is that still up in the air? Well, I believe that the initial, what the officer has, the knowledge the officer has at that point, I believe to give probable cause, yes. It might not be enough for a conviction later on down in the case, but at that time, and that's what we have to look at, what the officer, the knowledge the officer had at the time of the arrest. And at that time, Galindo's voluntary statement gives all the elements of tampering with a witness in the fourth degree. And I believe we've consulted with the deputies. I'm sorry, Your Honor. I'm hard of hearing. I'm sorry, and I shouldn't speak into this. The officer consulted with the ADA on this. Detective Sergeant Harney was the officer who contacted ADA NOAA. And there were actually two cases he contacted them about that day. Another case was about an order of protection. He was the detective sergeant. He was the liaison between the police department and the ADA's office. He would routinely contact the ADA's office to ask for advice, legal advice, on how they should proceed. It was no different in this case. After he got off the phone with ADA NOAA, he told the dispatcher to call Officer Fox in from patrol. Officer Fox came in. He took Galindo's statement, and that was it. Detective Harney had nothing to do with the case after that. He had no involvement in the case after that. He never spoke with Fox about the case after that. He never told him to arrest an appellant. It was solely based on Officer Fox's actions, not Detective Harney's actions. If the court has any other questions, thank you. Good morning, Your Honor. Rocco Avalon for the appellee's town of Carmel Police Officers. Without repeating what the co-counselor just stated in regards to the existence of probable cause, it's our position that the officers, specifically Officer Fox, clearly had at a minimum arguable probable cause when he interviewed Mr. Galindo and obtained a statement from him. The elements are all there to give him a reasonable – give a police officer a reasonable idea that there was an actual crime committed in regards to tampering with the witness. So your adversary argues that you've got to take an extra step, even with respect to arguable probable cause under 215.10, and that's that you've got to satisfy yourself at some level that there's an action or proceeding. What's your response to that? There is – and I disagree, Your Honor. There is no extra step. You disagree, but what's your response? He does not have to take any extra steps. What he needs to do is establish that based on the circumstances, based on the information he receives from a witness, and he believes to be credible and to have enough information that would allow him to – But the extra step, as I take it, is getting more information. Is there a court proceeding? You could get that from the victim witness. You could get that from – Correct. And he did that based on his interview of Mr. Galindo, based on his affidavit that he – Mr. Galindo actually wrote himself, signed it, clearly would establish to a reasonable police officer that there was, in fact, a – some type of legal proceeding pending that he was – Point me on 1591 to where Mr. Galindo says there's a legal proceeding. I'm sorry, Your Honor. I didn't hear that. Would you point me to – the statement is at 1591 of the appendix. Mr. Galindo states in his affidavit that he was a witness in a lawsuit. Where is that? I have it right in front of me, but it's one of his paragraphs early on in the paragraphs. He states that he was told by Mr. McGee that he was a witness in a lawsuit, and he was going to be called, and if he was called, they were going to ask him questions as to his citizenship. And if he was not a legal citizen – Where is that in the record? That's in A1591, Your Honor. Where? I'm looking at it. So are we all. Where in 1591? 1591. He said, you know, that Jimmy is using your name, et cetera. There's enough information in that affidavit that would give a reasonable police officer the information in order to arrest Mr. McGee in regards to witness tampering. But where in 1591? Are you referring to the – do you have 1591 in front of you? I don't have it in front of me, Your Honor. I apologize. Here you are. It states, Your Honor, that – He said, you know, than or that. Exactly. He said, you know, that – Is that what you're referring to when you're sort of summarizing for us? Correct, Your Honor. He's using your name. I said, no, I don't know. He said that he is because if you go to the court to go to ask you if you are legal in USA. So if you go to the court – That's the phrase. If you go to the court, yeah. And the go to, I said they are going to or that's – What? It's a little unclear there, right? The go to mean is probably they are going to? Correct. That's his handwriting. I see. Okay. So that would establish enough information for – This is not his first language. That is correct. However, he was asked if he needed a translator. He said he did not. There was a translator available. Was there a translator? I believe there was. I wasn't there for that. I wasn't the attorney, but I believe at that point there was. But in this case, there was enough information that – enough of an ability for him to communicate to the police officer, and he actually wrote this out himself. This is his handwriting, not the police officer's handwriting. Are there in the record, because I didn't see them and I may well have missed them, notes from Officer Fox that supplement, if you will, his interview, or do those not exist? I'm not aware of any other notes, Your Honor, no. In regards also, if I may, just in regards to the conspiracy, there is no conspiracy here. I believe all the police officers testified. They did not know Mr. Dunn, except for Officer or Detective Harnley, who stated that he did have a minor interaction with him when he did some work at his house. Other than that, that was it. None of the police officers were aware of a pending lawsuit prior to Galindo. Yes, I want to go through that with you, if I may, just so you can help me understand the record. None of the officers were aware that Galindo worked for Dunn. Is that right? That is correct. And were they aware that Dunn had accompanied Galindo to the police department? Were they aware that Dunn had what? Accompanied Galindo to the police department. They were not. They were not. Well, Detective, Harnley must have been at some point soon after that aware that Dunn had accompanied Mr. Galindo. Correct. And I believe Dunn did do some work for Detective Harnley at some point, but minor work. And were the officers aware that Dunn was in civil litigation with the plaintiff? They were not. According to their testimony, they were not aware. And two of the officers, specifically Lieutenant Carson and the Chief Johnson, didn't even get involved in this whole matter until after the arrest was even made. They weren't even aware. So what is the court proceeding of which they would have been aware that would have been the predicate of a possible violation of 215.10? Well, there was an arbitration. Initially there was a civil action, Your Honor, filed by Mr. McGee against Mr. Dunn in regards to basically like a breach of contract regarding a certain work. The second part of my question is what is the court proceeding of which they would have been aware that would have been a predicate for a violation? Well, they were told at some point that Mr. Galindo told Officer Fox that he was told he was going to be called into court. You're relying again on the statement. Correct. And under the statutes, that's basically all a police officer needs to do. If he believes that is reasonable information, it's credible information. But you would agree that the police department did not investigate Galindo's allegation before arresting the plaintiff, right? Is that fair to say? That's correct. When you say they didn't investigate the taking of Galindo's statement, bringing him in and speaking to him, that is part of an investigation. The only thing they had was this statement that we've been discussing. Correct. Prior to, yes, at the time of his arrest. So I've got a little bit of a problem. It seems odd to me that we wouldn't require in this context some more before you go arrest someone for witness tampering, particularly in connection with a statute that requires a court proceeding, something other than a reference to if you go to court, an actual court proceeding in which the complainant is involved as well as the possible person who's going to be arrested. Why isn't that the requirement? Well, Your Honor, they had enough information under the statute to conduct an arrest of the appellant here. That one clause in the handwritten statement, that was enough? Correct. Well, that also Detective Harney had also communicated with the assisting district attorney prior to that. As my co-counsel had mentioned, he had a couple of cases, and one of them was the McGeek matter. And he did consult with the assisting district attorney in order to ascertain whether there was enough. I think we were just told that it was just Mr. Fox, Officer Fox, who was responsible for the arrest. Correct. Officer Fox is the one who ---- So you're really asking us to disregard whatever Detective Harney had in his mind, and whatever he did, disregard that, and just look at Officer Fox? Well, Harney is the police department's liaison to the ADA. His job is to communicate with the assisting district attorney's office in order to speak about certain cases. McGee was one of them. However, the communication had nothing to do with Officer Fox arresting Mr. McGee. Officer Fox was told by the detective to interview Mr. Galindo, get a statement, obtain whatever information. Officer Fox himself, there's no record that he understood from Detective Harney or anybody else at the time of the arrest that there was an actual pending court proceeding, other than this written statement from Mr. Galindo. Correct. None of them knew there was a court proceeding at the time. They were told by Mr. Galindo that there was a ---- he was told there was a court proceeding and he was going to be called in as a witness and that he was threatened by Mr. McGee that if he came, he would be asked certain questions about his citizenship and he could be in trouble. Let me come at this in a slightly different direction. Was there any corroborating evidence in this case that would support Galindo's allegations? That is, anything beyond Galindo's allegations? Well, Mr. McGee testified himself that he did admit that he made the phone call. You know, he did tell him about the court proceeding. So that's in the testimony part of his deposition. The officers knew that? At the time of the arrest? Yes. No. Well. Not to my knowledge, no. But they knew basically what Galindo told the officers was that McGee told him that he was coming, there was going to be a proceeding. That is correct. And he was going to be called as a witness and he was going to be asked about his status and he was going to be in trouble. That is correct. So everything that Mr. Galindo said came to him from Mr. McGee. That is correct. And then Mr. Galindo said, and I hung up, told him to leave me alone and hung up. Right. Exactly. Okay. That's A-1591. Correct. Right. Thank you. Thank you. All right, Mr. Lovett, you've reserved some time. With respect to speaking with ADA NOAA, that was never raised as a defense that they got advice from counsel. It was never briefed by them on appeal. I think the issue was academic. With respect to ---- But it's your client to whom all of this is attributed. Your client says there's going to be a proceeding, you're going to be called, you're going to be in trouble. You're going to be asked and you're going to be in trouble. Right? No. Yes. In the statement, A-1591, Galindo says it all came from your client. A-1591, it says in the middle of the page, attributing this to my client, if you go to the court, the, this would be they, go to ask you if you are legal in USA. Right. If you go, it doesn't say there's a proceeding. It doesn't say there's an action pending. There is nothing anywhere in the record that indicates at any time that this phone call was made there was any action or proceeding. In fact ---- We're talking about arguable probable cause. We're also talking about qualified immunity. We're not dealing with the merits of this allegation. Right? Well, there has to be an objective basis to believe that there was reasonable cause. And based on the allegations made by Galindo, he didn't even make out close to the allegations of tampering. Mr. Lovett, we're parsing through these words and what the meaning of the words are. And part of the analysis is whether reasonable officers might disagree whether they got probable cause. And there's a reading of Mr. Galindo's handwritten statement of 1591 that suggests that there's a court proceeding and that Mr. McGee was trying to stop him from or encourage him not to attend and not to testify. Well, the statement that's attributed to Mr. McGee is hypothetical if you go to court. No, no. That may be true. That may be true. But would you agree with me that there is a way to read, it's not crystal clear, that that means that it's a purely hypothetical court proceeding. Some person might read it as he's referring to a court proceeding. Do you agree with that? Very simple question. Do what? I'm sorry. Do you agree that there is a way to read, it's slightly ambiguous, that there's a way to read this as suggesting that Mr. Galindo was referring to an actual court proceeding? I don't think so because he testified that he wasn't aware that at the time of McGee's phone call, he wasn't aware that We're talking about the testimony. Do you agree that the statement that we've been focused on is somewhat ambiguous? When compared to the statutory language, it's not ambiguous at all. I'm not asking you to compare it to the statutory language. Do you agree that what Mr. Galindo was referring to when he says the court, that's a little ambiguous? It may be ambiguous, Your Honor, but it has nothing to do with the tampering with the witness in the fourth degree statute. And that's what we're stuck with. If I might just briefly address the other issues that were raised. I say that Dunn was not a state actor. The recording of March 27th, 07, shows that he and Harney had linked up, had met, had discussed the case, and Harney and Dunn had agreed that, with admissions against interest by Harney, that my client should be prosecuted not once but potentially twice. The Tomaselli reference was scuttled as being a thin case. And then potentially, because Dunn was gathering documents, they would go with a perjury charge depending on what happened in the civil contract case. Fox did not, contrary to what was said, make the decision to make the arrest. Harney testified that he made the final decision. Harney, on the 327 recording, made the decision then himself. He said, we're going with the tampering. Whether Fox did nothing except on his own, he was told by Harney, who outranked him, and who introduced Dunn to Fox, said his subordinate, his worker, wants to make a complaint. Handle it. And then Harney, contrary to what was said before, actually, according to Galindo's testimony, was present when he met with Fox and gave his voluntary statement.  Dunn was there, according to Galindo, to make sure he came to court, I mean, to the police department. Dunn, contrary to what was said earlier, was in police headquarters and was there introduced to Fox by Harney. The suggestion that none of the police defendants knew that there was any controversy between McGee and Dunn is simply false, because in August of 2005, Harney was told by Dunn that he'd been thrown off the McGee job and they had a dispute. So if you want to infer something, confer that that was it. With regard to the Liberty Mutual matter, that did not occur at the time of the phone call by my client. It doesn't match up. It doesn't fit into the tampering statute. Fox altered Galindo's statement by twice, in reference to him, added into police documents that Galindo had told him about an ongoing civil proceeding. And Galindo never said that. Fox knew he was making something up, and he knew that the allegations in the voluntary statement didn't match up with the tampering statute. I think that's it, Mr. Lovett. I've given you some extra time. I'm grateful. We're all grateful for your argument, and we thank you, and we'll reserve decision. When I come back, am I on a debit? Thank you. That's true. I have to remember that. We have to record that somewhere. Thank you.